# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| BASIT ENTERPRISES, INC. D/B/A | § | |
| OILER'S QUICK STOP, BASIT JALILI, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1452 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this Food Stamp and False Claims Act case is Defendant United States of America's Motion for Summary Judgment [Doc. # 18] ("USA Motion"), to which Plaintiffs Basit Enterprises, Inc. d/b/a Oiler's Quick Stop and Basit Jalili (collectively, "Plaintiffs") have responded [Doc. # 20][1].  Defendant United States of America ("USA") has replied[2] and the matter is ripe for decision.

The USA seeks summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure dismissing Plaintiffs' claims challenging the decision of the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") to permanently disqualify Plaintiff Basit Enterprises, Inc. d/b/a Oilers' Quick Stop ("Basit

---

[1]     Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [Doc. # 20] ("Plaintiffs' Response").

[2]     United States' Response to Plaintiffs' Opposition to Motion for Summary Judgment [Doc. # 21] ("USA Reply")

Enterprises")[3] from participating in the federal Food Stamp Program operating within Houston, Harris County, Texas, under 7 U.S.C. § 2011 *et seq*.; *see* Exhibits 4, 5, 7 and 8 to USA Motion, authenticated by the Declaration of Harold Mash ("Mash Declaration"), Exhibit 1 to USA Reply.  The Court has considered the parties' submissions, all matters of record, and applicable legal authorities. The Court concludes that the USA Motion for Summary Judgment should be **granted** dismissing Plaintiffs' Food Stamp Program claim **but denied** insofar as the USA seeks summary judgment on its False Claims Act claim.

## I.      STATUTORY, FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the following statutory framework and background matters.

### A.      The Food Stamp Program

The Food Stamp Program is designed to give eligible households the opportunity to obtain a more nutritious diet, 7 U.S.C. § 2011, and augment the food purchasing power of low-income families through an allotment of "coupons" that can be redeemed at participating food retailers authorized by the Secretary of Agriculture to participate in the program, and used solely for eligible food items.  7 U.S.C. §§ 2013(a), 2012(g), 2016(b), 2018.  In Texas, the benefits are administered through an electronic benefits transfer ("EBT") card, known as the "Lone Star Card," issued to eligible families.  *See* Answer and Counterclaim [Doc. #

---

[3]      *See* Food Stamp Program Application for Stores, Exhibit 1 to USA's Motion, at 1-2. Throughout its papers, the USA erroneously refers to only one Plaintiff, presumably, Basit Enterprises, Inc. d/b/a Oiler's Quick Stop, which is the authorized retailer under the Food Stamp Program.  There actually are two Plaintiffs in this case, Basit Enterprises and its owner, Basit Jalili ("Jalili").

11], at 3-4.

Under the Act and its implementing regulations, a retail food store may not accept or allow the use of the Lone Star Card in exchange for cash, for non-food items, or for payment on credit accounts.  7 U.S.C. §§ 2013(a), 2016(b), 2024(b); 7 C.F.R. § 278.2(a).  A store that accepts the card (or food coupons) for ineligible items violates the Act.  7 U.S.C. § 2024.  In order to advance the goals of the Food Stamp Program, the Government monitors qualified stores and individuals to check that they are adhering to the Program's rules.  *See, e.g., Kahin v. United States*, 101 F. Supp. 2d 1299, 1300 (S.D. Cal. 2000); *Thakor v. United States*, 55 F. Supp. 2d 1103, 1105 (D. Nev. 1999).  A violation by a qualified store can result in temporary or permanent disqualification from the Program.  *See* 7 U.S.C. § 2021.

A participant in the Food Stamp Program who has been disqualified may bring an action in the United States District Court to determine the validity of the administrative action. 7 U.S.C. § 2023(a)(13).

**B.    The Undisputed Facts and Evidence**

The USA has submitted documentary evidence that its FNS Compliance Officer Harold Mash conducted an investigation of Oilers Quick Stop, Plaintiffs' retail store, during the period July 9, 2003 through October 8, 2003.  The USA contends, on the basis of Mash's investigation, as reflected in his reports, that an Oilers Quick Stop clerk accepted payment through a Lone Star Card for ineligible food items on eight occasions and exchanged Food Stamp benefits for cash on two occasions.  Plaintiffs object to the admissibility of this evidence.  The Court will address these objections below in Section III.A.2.  It is undisputed,

however, that the FNS's investigation resulted in an administrative determination that Plaintiffs had violated the Food Stamp Act and regulations.

On November 4, 2003, the USA sent Plaintiffs by certified mail a letter (the "November 4 notice") that Plaintiffs' store had been investigated for trafficking violations (defined in the letter as "exchanging Lone Star Card EBT benefits for cash")[4] as well as other violations under the Food Stamp Program, 7 C.F.R. §§ 270-282 (the "Regulations"), and that the store was being considered for permanent disqualification from the Food Stamp Program because of the serious nature and number of the charges.  *See* Exhibit 4 to USA Motion at 2 (BASIT–000215), citing 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R.  § 278.6(e)(1)(i).  Plaintiffs were informed that the Regulations allow the USDA to impose a civil money penalty (with a $40,000 limit) in lieu of permanent disqualification if Plaintiffs submitted to the USDA office within ten days of Plaintiffs' receipt of the November 4 notice "substantial evidence" that Basit Enterprises had an "effective policy and program in effect to prevent violations." Exhibit 4 to USA Motion.

According to the certified mail receipt, Plaintiffs received the USDA's November 4 notice on November 8, 2003.[5]  Plaintiffs do not contest this date.  Plaintiffs did not respond to the USDA on or before November 18, 2003, the tenth day after receipt of the November

---

[4]     Under the Regulations, "Trafficking means the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food; or the exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for coupons."  7 C.F.R. § 271.2.

[5]     *See* USA Motion Exhibit 4, at 4.

4 notice.  Accordingly, on November 18, 2003, the USDA sent Plaintiffs a letter (the "USDA's November 18 Letter") (Exhibit 5 to USA Motion) stating that no response to the November 4 notice had been received, finding that the violations set out in that letter did in fact occur, and concluding that Oilers Quick Stop under the registered owners were permanently disqualified from participating in the Food Stamp Program.[6]

Plaintiffs, by letter from counsel dated November 19, 2003 (the "November 19 Letter") (Exhibit 6 to USA Motion), responded to the USDA's November 4 notice.  Plaintiffs stated that Jalili and Basit Enterprises had no personal knowledge of the alleged transactions in violation of the Regulations and that the client (Plaintiffs) had "discharged this clerk who was apparently involved in all of the transactions listed."  Plaintiffs further indicated that "each clerk gets one on one training regarding various transactions including the use of the Lone Star Card" "for a period of several weeks," and that had he known of the first violation by his employee, that "employee would have been admonished or discharged at that time." *Id.*  Counsel stated also that Plaintiffs were surprised that "this clerk apparently accepted the Lone Star Card for the various non-food items.  This action was unintentional and without

---

[6]      Plaintiffs received this letter on November 20.  The USDA informed Plaintiffs that the determination of permanent disqualification (or other sanction) is final unless a timely written request is made to the Chief of the Administration Review Division of the USDA.  *See* 7 C.F.R. § 278.8 and Part 279 of the Regulations.  The November 18 letter indicated, however, that there might be a possibility for "future reauthorization."  *See* Exhibit 5 to USA Motion, at 2 ("**Failure to promptly return the material requested [all official materials relating to the Food Stamp Program] could jeopardize any future reauthorization.**" (Emphasis in original)).  The USDA November 18 Letter (at 2) also explained how under the Food Stamp Program Regulations, as amended, a firm that has been disqualified may become reauthorized, or which has been assessed a civil money penalty in lieu of a disqualification may retain authorization.

the knowledge of the management." *Id.* Plaintiffs finally requested a civil penalty in lieu of forfeiture. *Id.* Plaintiffs did not send any documentation that the violations had not occurred or that the USDA was in error.

The USDA, by letter dated November 20, 2003 (Exhibit 7 to USA Motion), rejected Plaintiffs' request for civil penalty because the response to the November 4 notice was postmarked after the required deadline, and concluded permanent disqualification was appropriate. The USDA thereafter received Plaintiffs' November 19 Letter, which was deemed a request for review of the USDA November 20 conclusions. *Id.* On March 10, 2004, the USDA informed Plaintiffs that it had made an administrative review of the permanent disqualification and considered Plaintiffs' information, as well as the investigative and administrative records of the FNS. *See* Exhibit 8 to USA Motion, at 1. The USDA concluded that the store's violations plus the two instances of "trafficking" by exchanging $24.89 in Food Stamp Benefits for $20 cash on one occasion and $48.26 in benefits for $30 in cash on a second occasion justified the permanent disqualification. *Id.* at 2. The USDA also pointed out that Plaintiffs had not submitted timely documentation demonstrating eligibility for the civil monetary penalty. *Id.*[7]

Plaintiffs filed suit pursuant to 7 U.S.C. § 2023(a)(13) to set aside such determination. Plaintiffs "deny that USDA has proved its case for trafficking based upon two transactions in the store on October 6 and 8, 2003, in which it found that '[t]he shopper exchanged

---

[7]        *See* USA's Motion Exhibit 7.

$24.89 in Food Stamp Benefits for $20 cash in the first transaction, and $48.26 Benefits for $30 cash in the second.'"  Complaint, at 1-2.  The USDA also concluded that Plaintiffs failed to establish their eligibility for civil penalty in lieu of permanent disqualification because Plaintiffs had not timely responded to the notice in the November 4 notice.

The USA seeks summary judgment dismissing Plaintiffs' claim as well as judgment on the USA's counterclaim brought under the False Claims Act, 31 U.S.C. § 3729(a)(1). Plaintiffs oppose the USA's Motion on several grounds that are addressed below.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).  An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir.

2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Id.* If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir. 1995)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Smith,* 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.,* 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Diamond Offshore Co. v. A&B Builders, Inc.,* 302 F.3d 531,

545 n.13 (5th Cir. 2002) (noting that "unsworn pleadings do not constitute proper summary judgment evidence").  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris*, 144 F.3d at 380.  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."  *Id.*  In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts.  *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   DISCUSSION

### A.    Food Stamp Program Violations

#### 1.    Standards of Proof

A participant in the federal food stamp program who has been disqualified may bring an action in the United States District Court to determine the validity of the administrative action. 7 U.S.C. § 2023(a)(13).  The district court must conduct a *de novo* review to determine whether a violation of the food stamp regulations actually occurred. 7 U.S.C. § 2023(a)(15) ("The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue, except that judicial review of determinations regarding claims made pursuant to section 2025(c) of this title shall be a review on the administrative

record."); 7 C.F.R. § 279.10(c); *see Hough v. United States Dep't of Agric., L.C.*, 707 F.2d

866, 867 (5th Cir. 1983).  The Food Stamp Act places the burden on the aggrieved store to

prove by a preponderance of the evidence that the agency action was invalid.  *Modica v.*

*United States*, 518 F.2d 374, 376 (5th Cir. 1975); *see also Hough*, 707 F.2d at 867-68 (citing

*Goodman v. United States*, 518 F.2d 505, 507 (5th Cir. 1975)).[8]  If the Court finds that the

agency's action in finding a violation was correct, then the Court may not disturb the

sanction imposed by the agency unless the action was arbitrary and capricious.  *Bordelon v.*

*Block*, 810 F.2d 468, 471 (5th Cir. 1986); *see Hough*, 707 F.2d at 868-69 (citing *Goodman*,

518 F.2d at 511); *Otto v. Block*, 693 F.2d 472, 473 (5th Cir. 1982) (implicit holding that

*Goodman* survives the 1977 amendments to the Food Stamp Act.)  In sum, the store owner

challenging administrative disqualification from the Food Stamp Program must prove that

the alleged program violations did not occur.  *See, e.g., Hough*, 707 F.2d at 867-68; *Kim v.*

*United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *Kahin v. United States*, 101 F. Supp. 2d

1299, 1302 (S.D. Cal. 2000); *Thakor v. United States*, 55 F. Supp. 2d 1103, 1107 (D. Nev.

1999); *Bon Supermarket & Deli v. United States*, 87 F. Supp. 2d 593, 598 (E.D. Va. 2000);

53 Am. Jur. Proof Facts 3d 301 § 8.

　　　　The district court's evaluation of the validity of the agency's penalty and the penalty's

severity is governed by the "arbitrary and capricious" standard, and deference to the agency's

decision is required.  *See, e.g., Bordelon v. Block*, 810 F.2d 468, 471 (5th Cir. 1986); *Otto*

---

[8]　　　Accordingly, there is no presumption of correctness given to the agency's allegations or
finding of a violation.

*v. Block*, 693 F.2d 472, 473 (5th Cir. 1982) (implicit holding that *Goodman* survives the 1977 amendments to the Food Stamp Act); *Bon Supermarket & Deli*, 87 F. Supp. 2d at 598, 601-03; *Lopez v. United States*, 962 F. Supp. 1225, 1230-31(N.D. Cal. 1997); *see also Hough*, 707 F.2d at 869.  A district court cannot set aside the penalty determination unless it is "unwarranted in law" or "without justification in fact." *Woodward v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984) (citation omitted).

"Cases arising under the Food Stamp Act, 7 U.S.C. § 2011, *et seq.,* may be resolved in the district court by summary judgment where there are no genuine issues of material fact." *Bordelon*, 810 F.2d at 470 (quoting *Cullen Drive-In Grocery v. Block*, 778 F.2d 1141, 1142 (5th Cir.1985) (citing *Modica v. United States,* 518 F.2d 374, 376 (5th Cir.1975))); *see also Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir. 1975) (by the phrase in 7 U.S.C. § 2023(a)(13) that the suit in "the United States district court . . . shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue," "Congress intended nothing more than the district court would not be bound by the administrative record."); *Cullen Drive-In Grocery*, 778 F.2d at 1142; *Saunders v. United States*, 507 F.2d 33, 36 (6th Cir. 1974); *Lopez*, 962 F. Supp. at 1228-29; *Bon Supermarket & Deli*, 87 F. Supp.2d at 598-99.  The plaintiff (*i.e.*, the store or its owner) in a Food Stamp Act violation case must satisfy all the responsibilities of any plaintiff. *Redmond*, 507 F.2d at 1011; *Bon Supermarket & Deli*, 87 F. Supp.2d at 598.  The Court next considers the parties' summary judgment evidence.

###### 2.    Analysis of Food Stamp Violation Claims

The USA has submitted documentation reporting that Oilers Quick Stop engaged in eight transactions in violation of the Food Stamp Program.  The Court first addresses the evidentiary objections posed by Plaintiffs and then analyzes the admissible evidence of record concerning the violations claimed by the USA by Plaintiffs of the Food Stamp Act and Regulations.

**Evidentiary Issues**.– The USA submitted as part of its Motion the following documents: a Report of Positive Investigation (Exhibit 2 to USA Motion, at BASIT-000180); ten Transaction Reports describing visits to Plaintiffs' convenience store, Oiler's Quick Stop, by a confidential informant ("CI"), each visit reportedly occurring during the period July 9, 2003 through October 8, 2003 (Exhibit 2 to USA Motion, at 000181 - 000213); and a summary sheet entitled OGC Worksheet (Exhibit 8 to USA Motion).  The USA also submitted the Affidavit of Don Willis ("Willis Affidavit") (Exhibit 3 to USA Motion) to authenticate the FNS's records.  Finally, the USA submitted copies of correspondence between the parties concerning the violations the USA claims occurred.  Exhibits 4, 5, 6, and 7 to USA Motion.

Plaintiffs first contend that the USA's documentation is improperly authenticated, apparently referring to the Willis Affidavit.  Plaintiffs are correct; the Willis Affidavit is not adequate to authenticate the FNS documents.  That affidavit refers to a completely different case and does not evince personal knowledge of the matters in issue.  However, in response

to this criticism, the USA submitted Mash's Declaration.  *See* Exhibit 1 to USA Reply.[9]

Mash avers that he was the FNS Compliance Investigator who conducted the compliance

visits at Oilers Quick Stop during the period in issue.  *Id.* at 1, ¶ 2, and at 2.  Mash declares

that he has "personal knowledge" of the matters set forth in the Report of Investigation on

Oilers Quick Stop and "the Transaction Reports that are a part of the investigation report."

*Id.* ¶ 3.  For reasons described below, the Mash Declaration is admissible and satisfies the

USA's authentication obligation (*see* FED. R. EVID. 901) to render the documents in USA's

Exhibit 2 admissible in evidence on summary judgment.

Plaintiffs also assert a general hearsay objection, presumably referring to the Report

of Positive Investigation and Transaction Reports (collectively, Exhibit 2 to USA Motion)

and the OGC Worksheet (Exhibit 8 to USA Motion).  To the extent Plaintiffs' hearsay

objection is directed to the descriptions of the conduct of the investigator, the descriptions

of the conduct of the confidential informant(s) observed by the investigator, or the listings

of eligible and ineligible items in the Transaction Reports, the objection is overruled.  Mash

has established that this information is within his personal knowledge.[10]  In each Transaction

Report, Mash explained his procedure for investigating Oilers Quick Stop.  For instance, the

report of a visit on July 9, 2003, states:

---

[9]     The Declaration is submitted under 28 U.S.C. § 1746.

[10]     Given Mash's work with FNS, the Transaction Reports may well be business records of the
       FNS and the USDA.  *See* FED. R. EVID. 803(6).  However, Mash has not established the
       detailed prerequisites for admissibility under that rule and the Court does not rely on it.

B.    SUMMARY OF TRANSACTION

1.    The following is a description of a food stamp transaction conducted by a confidential informant (CI) under the supervision of the reporting FNS Compliance Investigator [Mash].  All data is taken from a signed statement of the CI which is on file in the Compliance Branch Area Office.

2    On the above date, the CI accompanied me to the vicinity of the subject store.  The CI turned over to me all EBT cards and cash that was in her/his possession.  I furnished the CI with EBT card(s) having a total value of $282.50[11], as specified in Section E below.  After the transaction, the CI delivered to me the items purchased as described in Section C below and also the EBT card(s), and any cash as specified in Section E below.

3.    On the above date, at about (time)  10:40 AM , CI entered the subject store.  CI selected the items specified in Section C below.  This store has  1  primary grocery check-out register(s),  1  (Was/were) in operation at the time of purchase.  At the check-out there (was/were)  2  person(s) in line ahead of CI and  0  person(s) behind CI.  CI gave the clerk the EBT card and food stamp program benefits were deducted from it by the clerk as described in Section E below.  CI has also selected items listed in Section C5 below which the clerk refused to sell to the CI for food stamp benefits.  CI departed the store at  10:45 AM .[12]

The Transaction Report also contains comments by the investigator, an itemized "Summary

of Purchases," a physical description of the clerk at the register who conducted the

---

[11]    The amount inserted here is particularized in each transaction report.

[12]    Transaction Report for July 9, 2003, Exhibit A to Report of Investigation (Exhibit 2 to USA Motion), at BASIT-000181 (emphasis added).  This is a representative sample of the ten Transaction Reports.  Each contains the particulars about the value on the EBT card given to the CI on the specified occasion, the time of the visit, the number of check-out registers in the store and those  in operation at the time of the CI's visit, and the number of people in front and behind the CI on line to check out.  Each Transaction Report also mentions that a signed statement of the Compliance Investigator containing the specified data is on file in the FNS office.

transaction in issue, "details" of the transaction (such as what the investigator instructed the CI to attempt to purchase with the card), a record of the purchases made, and a certification and signature of the investigator. The certification states that "This declaration consists of 3 pages. I have signed or initialed each page. The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein. . . . I declare under penalty of perjury the foregoing is true and correct." The report is dated as "executed" the same day as the visit being reported. Each Transaction Report is in the same format (except that the description of the store clerk handling the transaction simply refers back to the July 9 report where the same person was observed).

The Mash Declaration, when considered in light of the contents of the Transaction Reports, establishes that those Reports are "public records" admissible under Rule 803(8) of the Federal Rules of Evidence. That Rule provides in pertinent part: that hearsay exceptions include "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, [certain matters in criminal cases] or (C) in civil actions and proceedings . . ., [and] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The Transaction Reports, as well as the summary of the investigation contained in the Report of Positive Investigation and the OGC Worksheet, are admissible in

evidence.[13]

Based on the USA's summary judgment evidence, the Court concludes that the USA has met its initial burden to demonstrate that it is entitled to summary judgment dismissing Plaintiffs' Food Stamp Program claim.  The Mash Declaration and the USDA official documents establish, as noted above, that under Mash's supervision one or more confidential informants ("CI") visited Oiler's Quick Stop ten times, and during eight of these visits, there were sales by Oilers Quick Stop charged on the Lone Star Card of ineligible items. Specifically, the CI obtained cash on the Lone Star Card on two occasions (Transaction Reports, Exhibits I and J to Exhibit 2 to USA Motion), purchased at Oilers Quick Stop "non -foods"[14] on seven occasions (Transaction Reports, Exhibits a, C, D, F, G, H and I to Exhibit 2 to USA Motion), "major non-foods" on three occasions (Transaction Reports, Exhibits G, H and I to Exhibit 2 to USA Motion).  Also, the CI was overcharged or improperly charged tax on two occasions.  Transaction Reports, Exhibits C and D to Exhibit 2 to USA Motion. *See* Report of Positive Investigation, dated October 21, 2003, Exhibit 2 to USA Motion, at BASIT-000180.  During the CI's first visit, July 9, 2003, the store employee was a man weighing 170-180 lbs. between the ages of 45 and 48, 6' or 6'1" tall, who had "SHORT HAIR. APPEARED TO BE FROM THE MIDDLE EAST."  July 9, 2003 Transaction

---

[13]     To the extent that Plaintiffs object on hearsay grounds to the statements by the CI included in the Transaction Reports, the objection is sustained.  The CI's statements are hearsay within the public records.  This exclusion of certain portions of the Transaction Reports, however, is immaterial for purposes of the Food Stamp Program claim Plaintiffs assert.

[14]     These include items such as bug spray, fabric softener, laundry bleach, and laundry detergent.

Report, Exhibit A to Exhibit 2 to USA Motion, at BASIT-000183. There is no dispute that this employee was not Defendant Jalili or president of Basit Enterprises, Syed Mohammad Wasim. *See* Investigative Statement/Continuation Sheet, Exhibit K to Exhibit 2 to USA Motion, at BASIT-000211. This evidence is sufficient to establish that Plaintiffs cannot establish that the violations asserted by the USA did not occur.

**The Merits.–** The burden therefore shifts to Plaintiffs to proffer admissible evidence that creates a genuine issue of material fact on each of the elements of their claim. Plaintiffs must come forward with specific evidence sufficient to support a jury verdict in their favor. Plaintiffs have failed to meet this burden. Plaintiffs first respond to the USA Motion on the merits that they did not have the opportunity to cross-examine the "alleged eyewitness." Plaintiffs do not identify the person they intend to refer to — the confidential informant or investigator Mash. Either way, this argument is frivolous. Plaintiffs had the entire discovery period to seek the identity and deposition of both the investigator and the confidential informant. Plaintiffs' failure to avail themselves of this opportunity for discovery provides no justification to deny the USA Motion.

Plaintiffs also rely on conclusory assertions in the Affidavit of Basit Jalili ("Jalili Affidavit," attached as an exhibit to Plaintiffs' Response) that "During the time of the alleged incidents, Basit Enterprises did not employ anyone of Middle Eastern descent," *Id.* ¶ 2, and that his "store records do not indicate that there were any transactions with the Lone Star Card for ineligible items as alleged. I personally discussed those allegations with all employees, and nobody could recall any of the alleged transactions." *Id.* ¶ 3. The first

statement about not employing a person of Mid-Eastern descent during the period in issue is inconclusive.  The Transaction Report described the clerk as "APPEARED TO BE FROM THE MIDDLE EAST"; there is no statement that the clerk in fact was from that region.  The physical description in the Transaction Report could apply to persons of Hispanic or other origins as easily as Mid-Eastern.  Notably, Plaintiffs do not claim a lack of knowledge that the incidents in issue occurred, as was represented by counsel in the November 19 Letter.[15] Plaintiffs have not supplied any information (documentary or otherwise) from the person or persons who worked the cash register at Oilers Quick Stop on the dates and times in issue.

Plaintiffs have not produced evidence to counter the USA's proof that "something of value" "was given for food stamp benefits."  Plaintiffs have submitted no factual material to specifically controvert or meaningfully address the USA's evidence of the violations found by the FNS compliance investigator Mash.  Plaintiffs merely rely on Jalili's conclusory averments that his store records do not contain evidence of the improper sales.  This assertion is insufficient to raise a genuine issue of material fact. There is no evidence that the store records Jalili searched covered the dates in issue or were complete.  Plaintiffs do not establish that the store records would distinguish the Lone Star Card transactions from other

---

[15]     While potentially equitably significant, this contention would be legally insufficient.  The store owner need not be personally involved in trafficking to be held liable.  *See* 7 U.S.C. § 2021(b)(3)(B); *TRM, Inc. v. United States*, 52 F.3d 941, 949 (11th Cir. 1995); *Bon Supermarket & Deli*, 87 F. Supp. 2d at 601 (citations omitted).  Section 2021(b)(3)(B) permits USDA to impose a sanction — either permanent disqualification or a civil money penalty — on an "innocent" store owner for trafficking by employees.  *Bakal Bros., Inc. v. United States*, 105 F.3d 1085, 1088-89 (6th Cir. 1997).  A store is responsible for the trafficking of food stamps by "[p]ersonnel of the firm."  7 C.F.R. § 278.6(e)(1)(i); *Bakal Bros.*, 105 F.3d 1089 n.2; *Bon Supermarket & Deli*, 87 F. Supp. 2d at 601.

credit, debit or cash transactions.

Finally, the averment that Jalili questioned his employees concerning the ineligible sales allegations is not probative.  There is no indication when these alleged conversations took place.  Jalili's averment in his affidavit easily could be construed to mean that he recently spoke to his current employees, not the people working at the Oilers Quick Stop when the offending transactions occurred.  Moreover, contrary to the implication in his affidavit, Jalili's November 19 Letter (written by counsel) to the USDA states that he discharged the clerk "who was apparently involved in all of the transactions listed."  Exhibit 6 to USA Motion.  This statement can only mean that Jalili discharged the guilty employee some time between October 8, 2003 and November 19, 2003, the date of Plaintiffs' letter to the USDA.  Thus, Jalili's averment in mid-2005 that he spoke to his "employees" suggests he did not include the offending former employee.  Plaintiffs have not produced evidence to prevail on their Food Stamp Program claim that the violations described in the Transaction Reports did not take place.

In sum, Plaintiffs have not pointed to evidence in the summary judgment record that would support a jury verdict in their favor on the existence of the eight Food Stamp Program violations.  *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (if Movant meets initial burden, nonmovant must go beyond pleadings and designate specific facts showing there is a genuine issue for trial).  Plaintiffs accordingly have failed to raise a genuine fact issue to contradict the USA's evidence.  The USA is entitled to dismissal of Plaintiffs claim.

It is further noted that Plaintiffs do not assert in their Response that the penalty imposed by the USDA is excessive, permanent disqualification, given the number and kind of violations found by the USDA.  The Court nevertheless has considered the issue of the severity of the penalty under an arbitrary and capricious standard of review.  The Court holds that Plaintiffs have not proffered any evidence or other justification sufficient to overrule the decision of the USDA to permanently disqualify Plaintiffs from the Food Stamp Program.  Thus, the USA's request for summary judgment dismissing Plaintiffs' claim under 7 U.S.C. § 2023(a)(13) is **granted**.

### B.    False Claims Act Counterclaim

The USA seeks summary judgment on its counterclaim against Plaintiff Basit Enterprises, Inc.[16] brought under the federal False Claims Act, 31 U.S.C. § 3729(a)(1).  The False Claims Act prohibits a person from "knowingly" presenting or causing to be presented to the United States "a false or fraudulent claim for payment or approval."  *Id.*  The USA contends that it has produced sufficient proof to warrant judgment that "Plaintiff" knowingly violated the False Claims Act in connection with the ten transactions in issue.

It is not apparent whether the USA seeks judgment against one or both Plaintiffs.  In any event, the USA must show under § 3729(a)(1) as to each Plaintiff that: (1) the Plaintiff presented or caused to be presented a claim to the USDA under the Food Stamp Program;

---

[16]    The USA erroneously refers in its Answer and Counterclaim to only one Plaintiff, "Basit Enterprises, Inc. d/b/a Oiler's Quick Stop," although there actually are two Plaintiffs in this case, Basit Enterprises and its owner, Basit Jalili.

(2) the claim was false or fraudulent; and (3) the Plaintiff knew the claim was false or fraudulent.  *See, e.g., United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 675 (5th Cir. 2002) (citing *United States v. Basin Elec. Power Coop.,* 248 F.3d 781, 803 (8th Cir. 2001); *United States ex rel. Oliver v. The Parsons Co.,* 195 F.3d 457, 461 (9th Cir. 1999); *United States v. Burns,* 162 F.3d 840, 850 (5th Cir. 1998)), *modified on reh'g en banc*, 326 F.3d 669 (5th Cir. 2003);  *Hindo v. Univ. of Health Sciences*, 65 F.3d 608, 613 (7th Cir. 1995); *see United States ex rel Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) (including the requirements that the false statement be material and that the Government have paid out money on the basis of the false statement).  The USA alleges in its Counterclaim that, as a result of the eight false claims made by Plaintiff Oiler's Quick Stop, to wit, exchanging Food Stamp benefits through the Lone Star Card for cash and ineligible items,  the USA has been damaged in the amount of $124.83.[17]  USA Answer and Counterclaim [Doc. #11], Count One, at 7-8.  Therefore, the USA seeks recovery under the False Claims Act from Plaintiffs for three times the damage amount of $124.83, or $374.49.  *Id*. at 8.  Further, the USA seeks a determination that Plaintiffs are liable for a civil money penalty of not less than $5,000 and not more than $10,000 for each false claim specified above, and for such other relief as the court determines appropriate, together with the costs of this action.  *Id*.

---

[17]    The USA inconsistently refers in its Memorandum, at 10, ¶ 21, to damages of $114.43.  The FNS's documents, however, indicate that the damages are $124.83.

The primary issue presented on the USA's False Claims Act cause of action[18] is whether Basit Enterprises and/or Jalili "knowingly" engaged in the violations.  The term "knowingly" is defined by the False Claims Act as (1) having "actual knowledge of the information"; (2) acting "in deliberate ignorance of the truth or falsity of the information"; or (3) acting "in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b); *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 681 n.7 (5th Cir. 2003). "A defendant may be liable for a civil false claim by 'knowingly' presenting such a claim, 31 U.S.C. § 3729(a)(1), but specific intent to defraud is not required. 31 U.S.C. § 3729(b). On the other hand, the statute's definition of 'knowingly' excludes liability for innocent mistakes or negligence." *Southland Mgmt. Corp.*, 326 F.3d at 681 (citing *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1074 (9th Cir. 1998); *Hindo*, 65 F.3d at 613-14. Broad and "familiar principles of agency law govern the inquiry of knowledge of a corporation," and a "corporate principal is generally considered to know what its agents discover concerning those matters in which the agents have power to bind the principal." *In re Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001) (footnote omitted).

> An agent's knowledge is imputed to the corporation where the agent is acting within the scope of his authority and where the knowledge relates to matters within the scope of that authority.  While courts generally agree that the knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation, they differ as to the effect of knowledge acquired by other employees.  The decision on whether to impute

---

[18]    Plaintiffs have not controverted the USA's proof in the summary judgment record (*i.e.*, the Transaction Reports and the Report of Positive Investigation), that Basit Enterprises benefitted from the unlawful transactions.

> knowledge acquired by such employees tends to be fact-intensive and
> contingent on the specific legal regimes involved.

*Id.* (footnotes and citations omitted). The factual determination of whether an employee's knowledge should be imputed to the corporate owner is "sensitive to the scope of an owner's control over his agents." *Id.* at 396. Thus, although the Fifth Circuit has permitted under certain circumstances the knowledge of a cashier to be imputed to the store/employer in a case under the False Claims Act, *see United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977) (citing *United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir. 1966)), as has at least one other appellate court, *see, e.g., Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983), the facts of each case are to be considered on their own.[19]

The USA argues that it has met its summary judgment burden on this issue and that Plaintiffs' November 19 Letter from counsel (Exhibit 6 to Defendants' Motion) supports the USA's views. That letter stated that the food stamp violations were committed by an employee "without the knowledge of the management" and was "unintentional." The USA contends these statements are not sufficient to raise a genuine fact issue because they are conclusory and non-specific. USA Motion, at 8. Interestingly, Jalili in his Affidavit does not deny knowledge of the violations, let alone address the False Claims Act cause of action.

---

[19]    In the November 19 Letter, counsel explained that "his client," Basit Enterprises, Inc. "did not have personal knowledge of the alleged transactions that are in violation of sections 278.2(a), he [*sic*] has since discharged this clerk." Exhibit 6 to USA Motion. Moreover, the letter sets forth some training procedures for the store clerks. *Id.* These steps are material to the issue of Plaintiff Jalili's knowledge, as well as that of Basit Enterprises, Inc.'s agents, and/or their reckless disregard or deliberate indifference of the requirements of the False Claims Act.

The Court, nevertheless, is unpersuaded that the award of summary judgment in favor of the USA on this claim, with associated damages and penalties, is appropriate without a trial. While Plaintiffs' November 19 Letter is not submitted in evidentiary form to support the truth of the matters asserted on Plaintiffs' behalf, the letter provides some indication of Plaintiffs' positions about the reasons for the Food Stamp Program violations. The interests of justice are served by a trial on the False Claims Act violations the USA alleges and the remedies it seeks.[20]  The Court needs to hear the testimony and consider the credibility of Basit Enterprises' witnesses to decide if conduct was "knowing" as legally defined, or in reckless disregard or deliberately indifferent to the False Claims Act's requirements, and thus to determine the existence and scope of the False Act Claim violations. This testimony also will assist the Court to assess the appropriate penalty, if any. Accordingly, the USA Motion for Summary Judgment on the False Claims Act cause of action is **denied**.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the USA Motion for Summary Judgment dismissing Plaintiffs' claim that it did not violate the Food Stamp Program as alleged in the Transaction Reports and other FNS documents. The Court, however, denies without prejudice the USA Motion on its Counterclaim under the False Claims Act.

No party has requested a jury for trial of this case. The trial should take no more than one day. The trial in this case will be held in June, 2005, as set forth below. It is therefore

---

[20]    For the reasons set forth earlier, there is no need for a hearing on Plaintiffs' claims under the Food Stamp Act.

**ORDERED** that the Court **GRANTS in part** the USA's Motion for Summary Judgment [Doc. # 18] dismissing Plaintiffs' claim that they did not violate under the Food Stamp Program, on the dates and in the manner alleged in the Transaction Reports and other FNS investigative documents, but it is **further ORDERED** that the USA Motion for Summary Judgment is **DENIED without prejudice** on its Counterclaim under the False Claims Act. It is further

**ORDERED** that the Docket Call set for July 22, 2005 is hereby **VACATED**, and **Docket Call is RESET for June 17, 2005, at 4:00 p.m.** The parties shall show cause on that date why trial should not commence on **June 22, 2005, at 9:00 a.m.** in Courtroom 9-F, United States Courthouse, 515 Rusk Street, Houston, Texas. It is further

**ORDERED** that the parties' Joint Pretrial Order is due **June 16, 2005**.

Signed at Houston, Texas this **3rd** of **June, 2005**.

Nancy F. Atlas
United States District Judge